IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JEFFERY HARRIS AND RHONDA HARRIS, <br><br> Plaintiffs, <br><br> v. <br><br> JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 5:11-CV-135 (MTT) |

# ORDER

This matter is before the Court on the Defendant's Motion for Summary Judgment.  (Doc. 33).  For the following reasons, the Motion is **GRANTED**.

## I.  FACTUAL BACKGROUND

Plaintiffs Jeffery and Rhonda Harris executed a promissory note and a security deed on September 17, 2002, to purchase a home located at 380 Potts Pond Road, Barnesville, Georgia 30204.[1]  (Doc. 6 at ¶ 2; 6-1).  The Plaintiffs also executed an Escrow Option which allowed them to pay their real estate taxes and homeowners insurance directly rather than through an escrow account.  (Doc. 6-1 at 58).  Shortly after the documents were executed, the original loan servicer sold and transferred the mortgage loan to Washington Mutual Bank ("WaMu").  (Docs. 6 at ¶ 5; 36-2 at 26).  The Plaintiffs allege that they made their monthly payments and paid their taxes and

---

[1] The original loan documents use the address 400 Potts Pond Road.  (Doc. 6-1).  Jeffery Harris testified that he did not notice the discrepancy until he made his first payment.  (Doc. 36-1 at 12:21-25; 13:1-2).  Harris also testified that on several occasions he called WaMu to have the address corrected, but apparently the correction was not made until February 11, 2008.  (Docs. 4-4; 36-1 at 13:3-23).

insurance on time without incident until February of 2008.  (Doc. 6 at ¶ 6).  The Plaintiffs admit, however, that they have not made their last 25 payments[2] to Chase with the exception of three trial-period payments at the end of 2011 under a proposed mortgage modification.  (Docs. 36-1 at 77:16-21; 36-3 at 17:9-25; 18:1-12).

On February 19, 2008, WaMu sent the Plaintiffs their monthly statement which included a charge for the Plaintiffs' 2007 property taxes that WaMu had paid on the Plaintiffs' behalf.  (Doc. 6-2 at 1).  The Plaintiffs allege that WaMu incorrectly paid taxes on 400 Potts Pond Road in addition to the Plaintiffs' property.  Although the tax office corrected the error and refunded the difference between the two properties to WaMu and the Plaintiffs reimbursed WaMu for their 2007 taxes in June 2008, the Plaintiffs allege that the issue was not resolved because WaMu did not properly credit their account with the June 2008 payment.  (Doc. 36-1 at 35:15-23; 40:17-22).  The Plaintiffs further allege that their later monthly payments were not properly credited which caused them to incur additional late fees and escrow expenses.  (Doc. 6 at ¶ 12).

In September 2008, Defendant JPMorgan Chase Bank, N.A. acquired the Plaintiff's mortgage from WaMu.  (Doc. 16 at ¶ 13).  On December 19, 2008, WaMu sent a letter to the Plaintiffs informing them that WaMu was returning their most recent payment because the Plaintiffs' loan was "seriously delinquent" and requested payment for the full amount due instead.  (Doc. 6-5).  On January 30, 2009, Chase, through its law firm, notified the Plaintiffs that their home was scheduled for a foreclosure sale on March 3.  (Doc. 6-6 at 3).  The Plaintiffs allege that they attempted to resolve the

---

[2] The Plaintiffs admissions were made at their depositions which took place on October 26, 2012, and November 12, 2012.

problem to no avail, and the foreclosure sale was rescheduled for April 7.  (Doc. 6 at ¶ 15).

While the foreclosure sale did not take place, the Plaintiffs allege that Chase continued to insist they owed arrearages "until September 2010 when [the] Plaintiffs essentially gave up their struggle with [Chase] and requested paperwork to have their mortgage modified."  (Doc. 6 at ¶ 19).  On October 1, 2010, the Plaintiffs received another notice of foreclosure sale scheduled for November 2.  (Doc. 6-10 at 1).

On November 3, 2010, Chase sent the Plaintiffs a letter notifying them that their loan had been converted back into a non-escrow account and that they owed $2,475.57 to Chase for taxes previously paid on the Plaintiffs' behalf as well as $1,027.04 to the tax commissioner for 2010 property taxes.  (Doc. 6-11).  On December 1, the Plaintiffs received yet another notice of a foreclosure sale scheduled for January 4, 2011.  (Doc. 6-12 at 1).  This foreclosure sale did not take place either, and the Plaintiffs' mortgage modification request was denied in January 2011.  (Doc. 6 at ¶ 23).

The Plaintiffs brought claims for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing.  Chase moved for summary judgment on those claims and on its counterclaims for breach of contract and attorney's fees.  The Plaintiffs did not file a response to Chase's Brief in Support of its Motion or Chase's Statement of Material Facts.  Thus, the Court finds that the facts as set forth by Chase in its Statement of Material Facts as to Which There is No Dispute (Doc. 34) are admitted.  M.D. Ga., L.R. 56.  The Court has also reviewed the record and finds the facts undisputed.

## II.  DISCUSSION

**A.  Motion for Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"'If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment.'" *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (quoting *Four Parcels*, 941 F.2d at 1438).  The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case, on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438.  In other words, the moving party's evidence must be so credible, that if not controverted at trial, the party would be entitled to a directed verdict. *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'"  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1992)).

### B.  Breach of Contract Claim

The Plaintiffs contend that Chase breached an implied contractual provision of the mortgage by failing to correct billing errors caused by Chase's predecessor, WaMu.  Because of the alleged failure to correct billing errors, the Plaintiffs argue they have suffered economic damages approximately equal to "all late fees, penalties, attorney fees, unnecessary escrow monies, and any other fee or cost that would not have been charged had the Defendant and the Defendant's predecessor not breached the contract."  (Doc. 6 at ¶ 36).  The Plaintiffs further allege that they were forced to incur attorney's fees because Chase acted in bad faith and engaged in unfair dealing.

"Under Georgia law, a plaintiff in a breach of contract action must establish (1) an enforceable contract, (2) breach, and (3) 'resultant damages to the party having the

right to complain about the contract being broken.'" *Barkwell v. Sprint Commc'ns Co.*, 2010 WL 5069912, at *4 (M.D. Ga.) (citations omitted).[3] The Parties do not contest that the Note and Security Deed are enforceable. Thus, the Court must determine whether there has been a breach and whether such breach resulted in damages.

The Plaintiffs admit that they have not made their last 25 mortgage payments to Chase other than during the trial-period of their proposed mortgage modification. (Docs. 36-1 at 77:16-21; 36-3 at 17:9-25; 18:1-12). The Plaintiffs have not provided any evidence of the damages resulting from alleged billing errors they claim to have suffered. In fact, the Plaintiffs testified that WaMu's error in billing the Plaintiffs for property taxes for both 380 and 400 Potts Pond Road was corrected in 2008 shortly after the billing error occurred. (Docs. 6-11; 36-1 at 19:1-4; 35:15-20; 36-3 at 30:3-9).

Further, WaMu was not in error for billing the Plaintiffs for the 2007 property taxes on 380 Potts Pond Road and revoking the Plaintiffs' escrow waiver. The Plaintiffs executed an Escrow Option which provided:

> Please be advised that the [waiver] of escrows may be revoked at the servicer's option. Even when the escrow deposit account requirement has been waived, the servicer remains responsible for the timely payment of the taxes and insurance premiums. If the mortgagor fails to pay the taxes or does not keep the insurance in force, the servicer must advance its own funds to pay any outstanding bills, revoke the waiver, and begin collecting monthly deposits for the escrow deposit account to pay future bills.

[3] The Parties agree that Georgia law governs the Note and Security Deed.

(Doc. 6-1 at 58).  The Plaintiffs did not pay their 2006 property taxes until June 21, 2007.  (Doc. 36-2 at 35).  A lien had been placed on the property on March 5, 2007.  (Doc. 36-2 at 36).  The Plaintiffs were delinquent in paying their 2007 property taxes as well, resulting in another lien on the property.  (Doc. 36-2 at 39).  Thus, WaMu, under the terms of the Escrow Option, appropriately revoked the waiver, paid the Plaintiffs' delinquent 2007 property taxes, and attempted to collect monthly escrow deposits going forward.  When the Plaintiffs refused to pay the monthly deposits, WaMu advanced its own funds for the Plaintiffs' 2008 property taxes.  (Doc. 36-2 at 40).  Once the mortgage was transferred to Chase, Chase advanced its own funds pursuant to the Escrow Option for the Plaintiffs' 2009[4], 2010, and 2011 property taxes.  (Doc. 36-2 at 45-47).  Thus, to the extent the Plaintiffs' claim for breach of contract is premised on Chase's escrow deposit account requirement and Chase's advancement of funds to pay the Plaintiffs' overdue property taxes, this claim is without merit.

Further, the Plaintiffs' claim for breach of contract based on improperly charged late fees and returned partial payments is without merit.  The Note permits the loan servicer to charge late fees for overdue payments, and the Plaintiffs have not submitted any evidence that any of the late fees charged by WaMu or Chase were improper.  Also, under the terms of the Security Deed, Chase was permitted to "return any payment or partial payment if the payment or partial payments [were] insufficient to bring the Loan current."  (Doc. 6-1 at 39).  The Plaintiffs were notified that the failure to pay property taxes constituted a default under the terms of their mortgage.  (Doc. 36-2

---

[4] The Plaintiffs made a delinquent payment of $250.00 toward their 2009 property taxes but did not pay in full.  (Doc. 36-2 at 43).  Chase paid the remaining balance of $918.63 on February 27, 2010.  (Doc. 6-11).

at 41). Thus, there is no evidence that Chase improperly attempted to foreclose on the Plaintiffs' property. Accordingly, the Court finds that Chase is entitled to summary judgment on the Plaintiffs' breach of contract claim.

### C. Breach of Covenant of Good Faith and Fair Dealing

"Under Georgia law, 'every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.'" *Pace v. CitiMortgage, Inc.*, 2013 WL 55825, at *4 (M.D. Ga.) (quoting *Martin v. Hamilton State Bank*, 314 Ga. App. 334, 335, 723 S.E.2d 726, 727 (2012)). "This duty, however, does not create an independent cause of action disconnected from the contract from which it arises." *Id.* (citation omitted). In support of this claim, the Plaintiffs allege that Chase's "ongoing failure … to live up to [their] unwritten obligations" to correct billing errors demonstrates bad faith and unfair dealing. (Doc. 6 at ¶ 35).

This claim fails for several reasons. First, the Plaintiffs failed to allege an express term of the Note or Security Deed that Chase allegedly breached. *See Lesman v. Mortg. Elec. Registration Sys., Inc.*, 2013 WL 603895, at *3 (N.D. Ga.) ("Under Georgia law, a plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing unless the plaintiff has alleged a breach of an express term of the contract."). Second, the Plaintiffs have not shown Chase caused or failed to correct alleged billing errors or that Chase otherwise breached the Note or Security Deed. Because the Plaintiffs have not shown that Chase's, or its predecessor's, actions were in violation of any of the terms of the Note or Security Deed, the Plaintiffs cannot establish that Chase acted in bad faith or engaged in unfair dealing. *See Cox v. Athens Reg'l Med. Ctr., Inc.*, 279 Ga. App. 586, 591, 631 S.E.2d 792, 797 (2006) ("There can

be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do."). Accordingly, the Court finds that Chase is entitled to summary judgment on the Plaintiffs' breach of the covenant of good faith and fair dealing claim.

### D. Attorney's Fees

Nor are the Plaintiffs entitled to recover attorney's fees. "[A]ttorney fees and expenses of litigation under O.C.G.A. § 13-6-11 … are ancillary and recoverable only where other elements of damage are recoverable on the underlying claim." *Freeman v. Wheeler*, 277 Ga. App. 753, 757, 627 S.E.2d 86, 90 (2006) (citations omitted). The Plaintiffs have failed to establish that they are entitled to recover on their breach of contract claim or their breach of the covenant of good faith and fair dealing claim and, therefore, may not pursue a claim for attorney's fees. Accordingly, Chase is entitled to summary judgment on the Plaintiffs' claim for attorney's fees.

### E. Breach of Contract Counterclaim

Chase contends that the Plaintiffs have breached the terms of their Note and Security Deed by failing to make their monthly payments and that, as a result of defaulting on their mortgage, all principal, interest, and other charges have been accelerated and are now due. Chase has sufficiently established that the Plaintiffs have breached the terms of the Note and Security Deed by failing to pay their monthly mortgage payments and by failing to bring their account current. Chase asserts that the Plaintiffs are liable under the Note in the principal amount of $65,730.30 plus interest calculated through February 15, 2013, in the amount of $10,702.77 and interest accruing from February 15 through the date of judgment at a per diem rate of $11.93.

Chase asserts it is also owed $6,986.09 in escrow advances, $23.69 in late charges, a $12.00 recording fee, and $4,317.52 in corporate advances.[5] The Plaintiffs have not put any evidence in the record to dispute the amount Chase claims it is owed. Accordingly, summary judgment is granted on Chase's counterclaim, and Chase is entitled to an award of $88,903.89.

### III. CONCLUSION

For the foregoing reasons, Chase's Motion for Summary Judgment is **GRANTED**.  The Court will award a judgment of $88,903.89.

**SO ORDERED,** this 4th day of June, 2013.

> S/ Marc T. Treadwell
> MARC T. TREADWELL, JUDGE
> UNITED STATES DISTRICT COURT

---

[5] Chase submitted both an affidavit from David Senesac, a vice president at Chase, and a payoff quote sent to the Plaintiffs on February 12, 2013, to verify the amount of damages. (Docs. 35 & 35-1). The payoff quote also reflects $180.78 in a suspense account which has been deducted from the total amount of damages above. (Doc. 35-1).